Edgar F. Hazleton, S.
This proceeding is brought by the New School for Social Research to compel payment by decedent’s executors of the sum of $126,044.68, the unpaid balance of an alleged charitable subscription made by decedent during his lifetime.
*951 It appears from the proof that the decedent made an oral pledge on or about June 3, 1953, of the sum of $125,000 during a building drive conducted by petitioner. This pledge was made contingent upon petitioner’s raising the sum of $2,000,000 within a three-year period ending on June 2, 1956. Thereafter and on or about January 18,1955, during a conversation with Dr. Hans Simons, president of the New School, the decedent agreed to modify the terms of his pledge by increasing the amount thereof from $150,000 to $250,000, and he further agreed that the sum of $125,000, one half of the pledge, would be contributed when petitioner raised the sum of $1,000,000 for the construction of a proposed building at 74-76 West 12th Street, New York City. Decedent further agreed that the other half of his pledge, the sum of $125,000, would be contributed when petitioner raised an additional sum of $1,000,000 for the construction of a proposed building 63-69 West 11th Street, New York City, or if petitioner raised the sum of $2,000,000 in toto during its building drive before the date of June 2, 1956. Prior to decedent’s death, he contributed the sum of $123,955.32, leaving as an unpaid balance upon his pledge the sum of $126,044.68.
Charitable subscription agreements can rarely be regarded as part of a bargaining agreement that provide for a quid pro quo. It is clearly understood that such a subscription is a gift, and yet promises of this nature are now almost universally enforced as valid contracts. Depending upon the nature of the subscriptions, the courts have enforced them as bilateral contracts (Alleghany Coll. v. National Chautauqua County Bank, 246 N. Y. 369), or as unilateral contracts. In the case of unilateral contracts, subscription agreements merely constitute offers which, upon acceptance by a charity by incurring liability in reliance thereon, become binding. (Trustees of Hamilton Coll. v. Stewart, 1 N. Y. 581; Barnes v. Perine, 12 N. Y. 18; Keuke Coll. v. Ray, 167 N. Y. 96; I. & I. Holding Corp. v. Gainsburg, 276 N. Y. 427; Matter of Lord, 175 Misc. 921.) However, subscriptions which are conditioned upon all subscriptions for a like purpose aggregating a certain amount by a certain date, are deemed to lack the legal consideration to make them enforcible. Such a condition is in the nature of a condition precedent to, rather than the consideration for, the subscription. (Keuke Coll. v. Ray, supra; Trustees of Hamilton Coll. v. Stewart, supra; I. & I. Holding Corp. v. Gainsburg, supra; Tioga County Gen. Hosp. v. Tidd, 164 Misc. 273; Presbyterian Church of Albany v. Cooper, 112 N. Y. 517.)
I find that decedent’s pledge was an offer to enter into two divisible unilateral contracts. Each contract was to be accepted *952 subject to the prior satisfaction of the condition precedent, i.e., in the first contract, that the sum of $1,000,000 be raised, and in the second contract, that an additional like sum be raised, or that in toto, the sum of $2,000,000 be raised during the building drive before June 2, 1956.
Anent the defense of the Statute of Frauds raised by the respondents, part payment of the pledge by the decedent during his lifetime, together with a memorandum of the transaction contained in decedent’s cash projection sheets for the year 1955, are sufficient to remove this transaction from the purview of the statute. (Crabtree v. Elizabeth Arden Sales Corp., 305 N. Y. 48.)
It appears, with reference to the first contract, that the sum of $1,000,000 was- actually raised toward the construction of the building on West 12th Street, and that petitioner embarked upon a construction program and thereby did incur liabilities in reliance upon decedent’s pledge of $125,000. I, therefore, hold this to be an enforcible unilateral contract.
With reference to the second contract, the evidence indicates that the condition precedent was unsatisfied. Petitioner claims that the sum of $2,484,000 was raised for the building fund prior to June 2,1956. One of the pledges to said building fund, referred to upon the hearing as the “ List Pledge ”, involving the sum of $750,000, was indefinite and unascertained, and was merely an “ agreement to agree ” prior to June 2, 1956. (St. Regis Paper Co. v. Hubbs & Hastings Paper Co., 235 N. Y. 30.) Accordingly, the sum of $2,000,000 was not raised in accordance with the provisions of the condition. I, therefore, find that the decedent’s second offer was revoked because of the failure of petitioner to satisfy the condition within the time prescribed therefor.
A resolution made by the members of the finance committee at a meeting held on May 15, 1956, to the effect that the contingency was met, when in fact it was not, was the result of a mistake of material fact on the part of all of said members. Therefore, decedent’s concurrence with the said resolution did not act as a waiver of the condition.
Accordingly, after deducting the partial payments made under the first contract, I find the sum of $1,044.68 remains due petitioner from this estate.
Settle decree on notice.